***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. The Carrier on the risk is Cincinnati Casualty Company.
5. Plaintiff alleges to have sustained a compensable injury to his back and right hand as well as post-traumatic stress disorder and depression on September 15, 2009 arising out of and in the course and scope of his employment.
6. Defendants have denied this claim and contend that there is no causal relationship between Plaintiff's present medical condition and the employment and that the back claim and psychological claim are not proximately related to the accident.
7. An employment relationship existed between the employee and employer on September 15, 2009.
8. Plaintiff's average weekly wage is $493.69, yielding a compensation rate of $329.13.
9. Defendants paid Plaintiff temporary total disability benefits at a rate of $342.32 per week pursuant to the Form 63 for the following period of time: September 15, 2009 to December 13, 2009.
 *********** *Page 3 
On September 15, 2010, the parties entered into the following additional set of stipulations which were made part of the record by Deputy Commissioner Baddour through an Order entered on September 27, 2010:
 STIPULATIONS
1. The plaintiff has been paid $1,090 per month gross in long-term disability benefits by the defendant's group carrier, The Guardian Life Insurance Company of America ("The Guardian"), since an effective date of December 14, 2009. If it is determined any workers' compensation temporary total disability benefits ("TTD") are payable for periods of time when plaintiff has been paid long-term disability benefits by The Guardian, then The Guardian has a lien against such TTD payments.
2. If plaintiff is awarded TTD benefits for a period of time for which plaintiff has already been paid LTD benefits, then the workers' compensation carrier, Cincinnati Casualty Company ("Cincinnati") shall pay The Guardian, or its successor-in-interest the workers' compensation benefits that otherwise would have been paid to the plaintiff for such period of time on a week-by-week basis; provided that the amount that Cincinnati pays to The Guardian shall not exceed $251.54 per week, which is the weekly equivalent of the LTD monthly benefit of $1,090; and further subject to the plaintiff's contention that the repayment to The Guardian should be reduced by plaintiff's attorney's fees as described in the following paragraph.
3. The plaintiff contends that, if he is awarded TTD benefits for any periods of time for which he has already been paid LTD benefits by The Guardian, then the amount that Cincinnati pays to The Guardian shall be reduced by the attorney's fee that the Industrial Commission awards to counsel for plaintiff for the relevant period of time. *Page 4 
4. Defendants hereby withdraw Defendant's Motion to Present EvidenceConcerning Group Disability Benefits Paid to the Plaintiff and 100%Funded by Defendant Employer, dated September 13, 2010; provided that these Stipulations are approved by the Industrial Commission.
 *********** EXHIBITS
The following exhibits were admitted into evidence before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Indexed Set of Paginated Exhibits Prepared by Plaintiff
 (c) Stipulated Exhibit 3: Indexed Set of Paginated Exhibits Prepared by Defendants
 *********** ISSUES (a) Whether Plaintiff sustained a compensable aggravation of his pre-existing back condition as a result of his accident at work on September 15, 2009?
 (b) Whether Plaintiff suffers from post-traumatic stress disorder (PTSD) and depression as a result of his accident at work on September 15, 2009?
 (c) Whether Plaintiff suffers from a compensable occupational disease to his feet and lower legs due to repetitive use of the clutch and brake pedals of his truck?
 (d) To what benefits, if any, is Plaintiff entitled?
 *********** *Page 5 
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 58 years old, having a date of birth of March 10, 1953. Plaintiff completed the tenth grade and has worked as a truck driver for over twenty-six years.
2. Defendant-Employer hired Plaintiff to work as a truck driver on May 9, 2005. Plaintiff's job duties included performing pre-trip inspections and hauling loads. Additionally, Plaintiff was required to run the fork lift, occasionally load the truck, frequently sit in truck cabs for long periods of time, frequently lift 50 pounds (particularly the hood of the truck), and occasionally lift 70 pounds.
3. On September 15, 2009 at approximately 8:00 p.m., Plaintiff was driving a tractor trailer truck for Defendant-Employer on NC Highway 8 when the truck malfunctioned, jumped, and veered off the road, falling 20 feet over the highway embankment and coming to rest near a residence.
4. At the time of the accident, Plaintiff heard a young girl screaming. Plaintiff believed, at the time, that he had run over the girl and that she was trapped under the truck. As soon as the truck came to a stop, Plaintiff exited the vehicle and looked under the tractor trailer for the girl, who was not there. Later, a woman from the nearby residence told Plaintiff that her niece was inside the house when the accident occurred.
5. Shirley Misenheimer, and employee of Defendant-Employer who works in the area of Customer Services and Traffic, completed a statement on September 16, 2009 in which she indicated that when Plaintiff had called her to report the accident, he indicated that his hand was cut and his knee was hurt. She indicated that Plaintiff was extremely upset and that, in her opinion, he was in some degree of shock because he was very short of breath and agitated. She *Page 6 
talked to him the next day, and he reported that he was sore and that he kept reliving the accident.
6. David Furr, Human Resources Manager for Defendant-Employer, also completed a statement on September 16, 2009. He noted that he went to the scene of the accident and that Plaintiff appeared to be very shaken up. He also noted that Plaintiff's hand was bandaged and that he reported that it hurt.
7. The following day, September 17, 2009, Plaintiff went to Defendant-Employer's plant to complete an accident report at which time he reported that his back was hurting and that he could hardly walk.
8. Plaintiff saw Larry Roediger, PA-C on the same date. Mr. Roediger diagnosed Plaintiff with low back injury with radiculopathy to his right foot, abrasions to his right hand, and past history of lumbar disc disease and/or rupture. Mr. Roediger wrote Plaintiff out of work effective September 17, 2009.
9. Defendants completed an Industrial Commission Form 19 on September 18, 2009. On this form, Defendants noted that Plaintiff cut the top of his right hand and that he was complaining of lower back pain.
10. Plaintiff saw Mr. Roediger for a follow-up appointment on September 25, 2009. Mr. Roediger noted that Plaintiff's hand abrasions had healed and that he was not as stiff and sore in the back as he was previously, but Plaintiff continued to have low back pain that radiated down the back of his right leg to his foot. Plaintiff also told Mr. Roediger that he had been evaluated by a back surgeon within the past one to two years, and that back surgery was discussed. Mr. Roediger prescribed Hydrocodone to be taken every four hours as needed for pain. *Page 7 
11. On September 28, 2009, Plaintiff presented to Dr. Alfred L. Rhyne, III at OrthoCarolina for an orthopedic evaluation. Plaintiff reported pain in his lumbar spine with radiation into the right buttock and the posterior aspect of the right lower extremity as well as into the ankle. Dr. Rhyne also observed that Plaintiff was notably tearful and anxious and had difficulty explaining the accident due to emotional distress. Dr. Rhyne recommended an MRI of the lumbar spine and psychological counseling for Plaintiff.
12. Plaintiff subsequently underwent an MRI that showed mild stenosis throughout the lumbar spine but no neurological compromise. Additionally, no fractures were seen. Dr. Rhyne's impression was mechanical low back pain, mild degenerative disc disease, and mild stenosis of the lumbar spine, together with right leg pain.
13. Plaintiff continued to complain of ongoing pain and discomfort, and on October 9, 2009, Dr. Rhyne found Plaintiff to be in moderate pain and discomfort, walking slowly and purposefully. Plaintiff had an antalgic gait on the right and some pain with hip range of motion which produced buttock and gluteal pain.
14. Dr. Rhyne referred Plaintiff to Dr. W. Brian O'Malley, a psychologist at The Rehab Center, who performed an initial psychological evaluation of Plaintiff on October 12, 2009. Dr. O'Malley observed Plaintiff's affect to be anxious and his mood to be depressed. Plaintiff indicated to Dr. O'Malley that his reactions to the accident were unclear and that he had gaps in his recollection. Plaintiff rated his pain as a seven out of ten, with an average of seven and a range of five to nine. Plaintiff reported significant distress associated with the accident as well as intrusive thoughts throughout the day and night including nightmares and night terrors. *Page 8 
15. Dr. O'Malley determined, and the Full Commission finds, that Plaintiff was suffering from post-traumatic stress disorder ("PTSD") secondary to the September 15, 2009 accident.
16. Dr. O'Malley recommended a course of psychotherapy to assist Plaintiff in reducing his distress associated with PTSD, and to assist him in normalizing his function. Plaintiff began this treatment on October 20, 2009.
17. Plaintiff began physical therapy on October 22, 2009 at Stanly Regional for his lower back pain and right leg pain. The physical therapist recommended aquatic exercises, therapeutic exercise, HEP, modalities, neuromuscular re-education, gait training, and gentle manual therapy techniques. He also noted that Plaintiff reported visions of a little girl leaning out of a window in a building, with his truck buried into the bottom of the same building.
18. Plaintiff returned to his primary care physician, Dr. Isaias E. Melo-Lizardo, on October 27, 2009 at Dr. Rhyne's recommendation. Dr. Melo-Lizardo prescribed Percocet, Lotrel, Toprol, and Clonazepam.
19. On October 29, 2009, Defendants filed an Industrial Commission Form 63, Notice of Payment of Compensation Without Prejudice. Defendants specified the part of the body involved as the "low back." Defendants checked the box to indicate that they were paying indemnity benefits, and they also checked the box to indicate that they were paying medical benefits only and wrote "psychotherapy" next to this section of the form.
20. On November 3, 2009, Plaintiff reported to his physical therapist that his condition had improved. *Page 9 
21. On November 4, 2009, Plaintiff informed Dr. O'Malley that he had emotional improvement with treatment. Plaintiff was receptive to Dr. O'Malley's suggestions for additional treatment and showed interest in achieving further improvement in his function.
22. Plaintiff saw Dr. Rhyne again on November 4, 2009. Dr. Rhyne noted that physical therapy was helping Plaintiff to ambulate with a cane. Dr. Rhyne also noted that Plaintiff had longstanding mechanical low back pain with a history of chronic pain medication use that preceded his accident at work.
23. On November 18, 2009, Plaintiff presented once again to Dr. Rhyne. Plaintiff reported ongoing pain and discomfort in his lower back. He ambulated with a cane and complained of pain in his right leg. Dr. Rhyne did not think that Plaintiff had a surgical lesion and deferred to physicians at The Rehab Center to evaluate Plaintiff's pain, ergonomics and potential for restoration. Dr. Rhyne also ordered a myelogram CT scan to evaluate potential stenosis at the L3-4 level.
24. Plaintiff returned to Dr. Redding on December 9, 2009, which was his first visit since August 20, 2008. Dr. Redding diagnosed Plaintiff with back and right leg pain of unknown etiology status post-MVA. Dr. Redding ordered nerve conduction studies and EMGs, which were performed by Dr. John Lesher on January 18, 2010. Dr. Lesher concluded that the findings from those studies demonstrated polyneuropathy affecting both legs, and that the findings may be related to foot muscle atrophy from repetitive stress working as a long distance trucker. Dr. Lesher concluded that there was no evidence of radiculopathy in the right leg.
25. Dr. Redding testified that the lumbar MRI performed on October 3, 2009 and the myelogram and CT scan performed on December 2, 2009 did not reveal any significant changes from the lumbar MRI performed on July 17, 2008. There was no objective evidence of an acute *Page 10 
injury to Plaintiff's back. There was no evidence of advancement of the spondylosis between July 2008 and December 2009. Like Dr. Rhyne, Dr. Redding concluded that Plaintiff is not a surgical candidate.
26. Defendants filed a Form 61 denying Plaintiff's claim on December 11, 2009. One of the reasons listed for the denial was that there was "no causal relationship between the employee's present medical condition and the employment. The back claim and psychological claim are not proximately related to the accident." Plaintiff had no financial means of returning to Dr. O'Malley.
27. Dr. O'Malley thereafter called Plaintiff and asked him to come back to The Rehab Center at least one more time. When Plaintiff explained that he did not have the funds to do this and that his claim had been denied, Dr. O'Malley agreed to see Plaintiff without payment.
28. Plaintiff returned to Dr. O'Malley on December 18, 2009. At this visit, Plaintiff was reporting suicidal ideations. Dr. O'Malley explained that this type of regression is highly probable with patients with Plaintiff's problems.
29. On January 11, 2010, Plaintiff's primary care physician, Dr. Melo-Lizardo, wrote a letter indicating that Plaintiff was temporarily disabled. He indicated that Plaintiff's low back pain intensified after the accident, and that Plaintiff had also developed significant pain in his right leg, such that "both conditions prevent him from doing his work." Dr. Melo-Lizardo indicated that Plaintiff's restrictions included no driving, no sitting for long periods of time and no standing for long periods of time.
30. Plaintiff saw Dr. Mac at Stanly Orthopedic Clinic on January 25, 2010, February 12, 2010, March 12, 2010, April 9, 2010, and May 7, 2010. Plaintiff presented similarly at each visit. Plaintiff's pain was a nine of ten at its worst and a two of ten at its least. His pain was *Page 11 
sharp, constant and aching in his back and right leg. Plaintiff's symptoms were worse with standing, walking, lifting, laying in bed, driving and sitting. Dr. Mac diagnosed Plaintiff with lumbago, lumbar strain, spinal osteoarthritis, degenerative disc disease, chronic pain syndrome, and gluteal bursitis.
31. Plaintiff has suffered from chronic and at times severe back pain for many years. He was involved in a motor vehicle accident while driving a truck for a different employer in 1986. In response to a question about whether he hurt his back in his 1986 accident, Plaintiff testified during the hearing before the Deputy Commissioner, "I don't believe I did. I could have, but I don't believe so." However, he informed Dr. Redding during his August 20, 2008 appointment that he had a history of back and right leg pain dating back to 1986. Plaintiff has taken pain medications, including narcotics, for his back problems since at least 2000.
32. With regard to whether Plaintiff suffered an aggravation of his pre-existing back condition due to the September 15, 2009 accident, Dr. Rhyne testified:
 I did not find any structural damage to his spine on an MRI or a myelogram CT scan. I cannot tell that the motor vehicle accident altered his back situation in any way so I find it hard to believe that there is a dramatic change in his situation from a — from a structural standpoint. Now psychologically, Dr. O'Malley can probably tell you more about the trauma that occurs in an accident but clearly you've got — and I was not aware until two or three minutes ago about this gentleman's situation prior to the accident but clearly you've got a chronic pain patient who has been on a significant amount of narcotics prior to a motor vehicle accident and I — I really can't state that this accident is the primary source that he's not working at this point.
33. Similar to Dr. Rhyne, when Dr. Redding was asked to render a causation opinion, he was unable to state beyond speculation that Plaintiff suffered an aggravation of his pre-existing back condition. Dr. Ryhne first responded "that is a possibility, yes" and in a follow-up *Page 12 
question responded "I think it's more probable than not that the accident certainly could have aggravated his back pain."
34. The Full Commission finds that, while Plaintiff may have suffered a temporary aggravation of his pre-existing back condition following the September 15, 2009 accident, there is insufficient evidence to establish that any such aggravation extended beyond the period during which Defendants paid Plaintiff disability benefits without prejudice.
35. Dr. Redding offered no opinion regarding whether Plaintiff suffers from polyneuropathy affecting his legs due to repetitive stress of working as a long distance truck driver. On this issue, Dr. Redding deferred to Dr. Lesher, who did not testify. No other medical expert offered testimony on this issue. Plaintiff did not address the compensability of this condition in his contentions to the Commission.
36. Plaintiff also experienced problems with depression prior to his September 15, 2009 accident. In 2000, Plaintiff suffered from depression while in the process of moving to North Carolina to care for his wife's parents. This depression was treated briefly with antidepressants, but they were discontinued in hopes that getting more sleep would help alleviate Plaintiff's depression. Plaintiff also experienced some problems with depression in connection with other serious life events, including his brother's diagnosis with cancer and subsequent death, his own heart attack, and his niece's serious car accident. Plaintiff took various medications, including Klonopin for stress with anxiety. While Plaintiff visited Dr. Melo-Lizardo several times for his depression and anxiety prior to the September 15, 2009 accident, he had not seen Dr. Melo-Lizardo since March 13, 2009. Plaintiff's episodes of depression prior to the September 15, 2009 accident did not prevent him from driving his truck or performing his other job duties. *Page 13 
37. Dr. O'Malley testified that the September 15, 2009 accident caused Plaintiff to suffer from post-traumatic stress disorder and that he has been unable to return to work driving a truck as a result of that condition. Dr. O'Malley further testified that Plaintiff requires additional psychological treatment for his PTSD. As indicated above, Plaintiff was financially unable to continue treating with Dr. O'Malley after Defendants stopped paying for treatment and denied Plaintiff's claim.
38. Dr. O'Malley did not render an opinion during his deposition as to whether Plaintiff's accident either caused him to suffer from depression or aggravated pre-existing depression.
39. Based upon the preponderance of the medical testimony, the Full Commission finds that Plaintiff suffers from post traumatic stress disorder (PTSD) as a result of his September 15, 2009 accident, and that Plaintiff has been unable to return to his job as a truck driver since September 15, 2009 due to this condition. Plaintiff is not at maximum medical improvement for his PTSD and requires additional psychological treatment.
40. Depending upon the success of the additional treatment and the recommendations of Dr. O'Malley, Plaintiff may require the assistance of vocational rehabilitation to locate and/or train for alternative employment if he remains unable to return to work as a truck driver.
41. Defendants did not defend this claim without reasonable grounds.
 ***********
The foregoing stipulations and findings of fact engender the following: *Page 14 
 CONCLUSIONS OF LAW
1. The preponderance of the evidence of record establishes a causal relationship between Plaintiff's injury by accident of September 15, 2009 and his post traumatic stress disorder, and thus this condition is compensable. N.C. Gen. Stat. § 97-2(6).
2. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. FreightCarriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). In the present case, from the point that Defendants stopped providing medical treatment for Plaintiff's back condition, the preponderance of the medical evidence of record fails to establish that Plaintiff suffered from a compensable aggravation of his pre-existing back condition, and thus, this condition is not compensable. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has failed to establish that he suffers from a compensable occupational disease to his feet and lower legs. N.C. Gen. Stat. §§ 97-2(6), 97-53(13).
4. As a result of his compensable post traumatic stress disorder, Plaintiff is entitled to temporary total disability compensation at the rate of $329.13 per week from September 15, 2009 and continuing until he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his post traumatic stress disorder as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment provided by Dr. O'Malley. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 15 
6. Defendants are entitled to a credit for indemnity benefits previously paid, and for the overpayment of temporary total disability benefits from September 15, 2009 to December 13, 2009. N.C. Gen. Stat. § 97-42.
7. Defendants did not defend this claim without reasonable grounds and, therefore, Plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, Plaintiff is entitled to temporary total disability compensation at the rate of $329.13 per week from September 15, 2009 and continuing until he returns to work or further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum, with Defendants receiving a credit for indemnity benefits previously paid, and for the overpayment of temporary total disability benefits from September 15, 2009 to December 13, 2009.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's post traumatic stress disorder as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the past and future treatment provided by Dr. O'Malley.
3. Plaintiff's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel in one *Page 16 
lump sum of the accrued amount due Plaintiff and thereafter by deducting every fourth compensation check due Plaintiff.
5. The long-term disability carrier who paid Plaintiff benefits during the period of disability set forth in Paragraph 1, above, shall be entitled to repayment by Plaintiff up to the amount of long-term disability benefits actually paid to Plaintiff, but not to exceed the amount of workers' compensation benefits that Plaintiff is entitled to receive for each month after the attorney's fees set forth in Paragraph 4, above, have been deducted.
6. Defendants shall pay the costs due the Commission.
This the ___ day of September, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ TAMMY R. NANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1